IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:22-cr-145-ECM-SMD |
| ) | |
| MELISSA VASQUEZ GUARDADO ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Melissa Vasquez Guardado ("Guardado") is charged in a one-count indictment with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Indictment (Doc. 1). Guardado was arrested following a July 2021 traffic stop where officers discovered containers holding approximately six kilograms of heroin and fentanyl. Tr. (Doc. 39) pp. 6-7, 13-15, 27-28; Gov't's Resp. (Doc. 30) p. 3. The officers handcuffed Guardado, advised her of her *Miranda* rights—in Spanish—and questioned her about where she and the vehicle's other occupants were traveling. Tr. (Doc. 39) pp. 17-18, 49-51; Gov't's Resp. (Doc. 30) p. 4. Guardado now moves to suppress statements she made during that interview, arguing that there is no evidence that she understood the *Miranda* warning or that she knowingly and voluntarily waived her *Miranda* rights. Mot. (Doc. 28) pp. 2-5. The undersigned held an evidentiary hearing on August 31, 2022, and for the following reasons RECOMMENDS that Guardado's motion to suppress be DENIED.

I. **FINDINGS OF FACT**

At the hearing, the Government provided the testimony of Task Force Officer ("TFO") Andy Sutley ("TFO Sutley"), TFO Todd Mims ("TFO Mims"), and Group

Supervisor ("GS") Kevin De Stephano ("GS De Stephano"). Tr. (Doc. 39) pp. 4-54. Guardado did not present any witnesses but did enter a photograph from the scene into evidence. Def.'s Ex. 1 (Doc. 34-1) p. 2.

### A. The Initial Stop

At approximately 9:30 a.m. on July 27, 2021, TFO Sutley performed a traffic stop on a black Honda Accord (the "car") traveling north on I-65 in Butler County, Alabama. Tr. (Doc. 39) pp. 5-7. The legality of the traffic stop is not contested. Guardado was a passenger in the car. *Id.* at 9-10. TFO Sutley approached the car and asked the driver for her driver's license.[1] *Id.* at 7. She responded that she did not have a driver's license but did present an identification card. *Id.* at 7-8. During this exchange, TFO Sutley smelled alcohol, observed open beer bottles and bottle caps in the car, and saw a cardboard Corona beer box containing additional unopened bottles of beer in the back floorboard. *Id.* at 8. He then asked the driver to exit and stand at the back of the car. *Id.*

TFO Sutley re-approached the car to talk with Guardado and an accompanying juvenile. *Id.* at 9. He asked Guardado if she had a driver's license. *Id.* She responded that she did not, but she did produce an identification card from her wallet. *Id.* at 9-10. TFO Sutley started talking with the driver again and requested to search the car. *Id.* at 12. The driver consented. *Id.*

---

[1] Throughout his interaction with the driver and Guardado, TFO Sutley conversed mostly in English, but did use some Spanish. Tr. (Doc. 39) p. 12. While he does not speak fluent Spanish, he is able to give instructions necessary to conduct a traffic stop in Spanish. *Id.* at 16.

2

### B. The Search of the Car

After removing Guardado and the juvenile from the car, TFO Sutley searched the car. *Id.* at 12-13. He discovered a pillowcase underneath the Corona beer box in the back floorboard. *Id.* at 8, 13. TFO Sutley opened the pillowcase and discovered six packages wrapped in black tape. *Id.* at 13. After asking the car's occupants what was in the pillowcase and receiving no response, TFO Sutley and Lieutenant Burch ("Lt. Burch"), who had recently arrived at the scene, cut open one of the packages. *Id.* at 14. The package contained an off-white powder that was suspected to be a narcotic. *Id.*

### C. Post-Search Conversation

After the off-white powder was discovered, the driver and Guardado were handcuffed. *Id.* at 17. The driver was placed in TFO Sutley's vehicle, and Guardado was left standing along the interstate.[2] *Id.* at 18. TFO Mims then contacted GS De Stephano via telephone so he could speak to the driver and Guardado in Spanish. *Id.* at 35. TFO Mims did this because, based on the officers' conversations with the driver and Guardado, he believed the two would be more comfortable conversing in Spanish. *Id.* at 35, 47.

During the evidentiary hearing, GS De Stephano testified that he has had extensive training, and is highly proficient, in speaking Spanish. *Id.* at 43-47. He specifically stated that he has had more than 300 total hours of training in speaking Spanish. *Id.* at 43-47. He also testified that through his past employment with U.S. Border Patrol and work with the Drug Enforcement Administration ("DEA") in Panama, he has had countless interactions

---

[2] Guardado was eventually moved from the side of the interstate to inside one of the law enforcement vehicles at the scene. Tr. (Doc. 39) pp. 36, 48-49.

with Spanish speaking persons and has given *Miranda* warnings in Spanish more than fifty times. *Id.* at 43-47.

TFO Mims called GS De Stephano on his cell phone and handed it to Guardado so that she could speak with GS De Stephano over the speaker. *Id.* at 36, 42, 49. During the interrogation, Guardado was handcuffed and seated in one of the law enforcement vehicles on the scene. *Id.* at 36-37, 41, 48-49. GS De Stephano testified that during the phone call he could hear Guardado clearly and that he spoke with her in Spanish. *Id.* at 47-49. GS De Stephano asked Guardado her name and where she was from. *Id.* at 49. He then apprised her of her *Miranda* rights. *Id.* at 49-50. GS De Stephano read the rights directly from a *Miranda* card written in Spanish. *Id.* He testified that he went over the rights slowly because he was speaking in Spanish. *Id.* at 50.

After receiving her *Miranda* warning, Guardado spoke with GS De Stephano. *Id.* at 50-51. During the conversation, Guardado maintained that the drugs could not be hers. *Id.* She told GS De Stephano that she and the other occupants were going to see the driver's friend in Atlanta, but that she did not know where in Atlanta. *Id.* Throughout the conversation, which lasted approximately five minutes, Guardado responded appropriately to all questions posed by GS De Stephano. *Id.* at 51.

II.     **LEGAL STANDARDS**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court, pursuant to the Fifth Amendment, "established that custodial interrogation cannot occur before a suspect is warned of . . . her rights against self-

4

incrimination." *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). For *Miranda* purposes, a person is in custody where there are "circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). Put differently, unless a reasonable person feels that she could stop the interrogation and leave, the interrogation is custodial. *Id.* at 509.

Under *Miranda*, statements made during a custodial interrogation are inadmissible unless the defendant was warned of her *Miranda* rights and waives them "voluntarily, knowingly, and intelligently." *United States v. Farley*, 607 F.3d 1294, 1326 (11th Cir. 2010). The Government bears the burden, by a preponderance of the evidence, of establishing that a defendant made a voluntary, knowing, and intelligent waiver of her *Miranda* rights. *Id.*

### III.    DISCUSSION

Guardado argues that the Government failed to produce any evidence showing she (1) understood any *Miranda* warning that she was given, or (2) knowingly and voluntarily waived her *Miranda* rights. Mot. (Doc. 28) pp. 3-4. She points to the lack of a signed waiver or a recording of a verbal waiver in support of her arguments. *Id.* at 4. But, as set forth below, the undersigned finds that based on the testimony during the evidentiary hearing, the Government has satisfied its burden to show, by a preponderance of the evidence, that Guardado voluntarily, knowingly, and intelligently waived her *Miranda* rights. As such, the undersigned recommends that Guardado's Motion to Suppress be denied.

5

### A. GS De Stephano's interrogation of Guardado was custodial.

Guardado's interrogation was custodial. Again, an interrogation is considered custodial if a reasonable person feels that she could not stop the interrogation and leave. *Howes*, 565 U.S. at 509. Here, after the drugs were discovered, Guardado was placed in handcuffs and seated on the ground beside the interstate. Tr. (Doc. 39) pp. 17-18. Prior to the interrogation, she was moved into one of the law enforcement vehicles on the scene. *Id.* at 36, 48-49. Whether seated on the ground or in a law enforcement vehicle, a reasonable person would not feel at liberty to leave while handcuffed under these circumstances. Further, GS De Stephano testified that Guardado would not have been allowed to leave. *Id.* at 52. Accordingly, the interrogation was custodial.

### B. Guardado's wavier of her *Miranda* rights was valid.

Because the interrogation was custodial, the Government "has the burden of showing the knowing and intelligent nature of [Guardado's] waiver." *Farley*, 607 F.3d at 1326 (citing *Miranda*, 384 U.S. at 475). In making this determination, a court will consider two things:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quotations and citations omitted).

### 1. GS De Stephano gave a *Miranda* warning.

As an initial matter, the undersigned finds that GS De Stephano read Guardado her *Miranda* rights using a Spanish language *Miranda* card. *See* Tr. (Doc. 39) pp. 46-49. This finding, as well as others in this recommendation, hinges on GS De Stephano's testimony. Therefore, it is important to note that the undersigned finds that he appeared completely credible at the evidentiary hearing.

Credibility determinations "'are typically the province of the fact finder because the fact finder personally observes the testimony.'" *United States v. Martin*, 2016 WL 4611264, at *3 (M.D. Ala. Aug. 9, 2016) (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)). In pretrial criminal matters, the magistrate judge serves in the jury's traditional role as factfinder. *Id.* As factfinder, courts are guided by the same factors traditionally found to be determinative in the eyes of the jury. *Id.* These include (1) the demeanor and apparent candor of the witness, (2) any personal interest or other reasons to fabricate testimony, and (3) any conflicts between the testimony and other evidence. *Id.* (citing *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999)).

GS De Stephano appeared confident and was candid and direct in his answers to both the prosecutor and defense attorney. Further, his testimony was internally consistent, and he has no personal interest in the outcome of this matter. Moreover, given his extensive training and experience with the United States Border Patrol and the DEA, including an assignment in Panama, GS De Stephano's assessment of Guardado's ability to understand Spanish and the accuracy of her responses is reliable. Therefore, the undersigned finds GS De Stephano's testimony credible.

## 2. Guardado's waiver was voluntary, knowing, and intelligent.

The totality of the circumstances supports a finding that Guardado's waiver was voluntary, knowing, and intelligent. First, the officers did not exhibit coercive behavior. "The voluntariness determination is made on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation." *United States v. Cardenas*, 410 F.3d 287, 293 (11th Cir. 2005) (citation omitted). "A crucial aspect is the presence or absence of coercive behavior on the part of the government." *Id.* Indeed, "[t]he voluntariness of a waiver of [*Miranda* rights] has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Id.* (quoting *Colorado v. Connelly*, 479 U.S. 157, 170 (1986)) (alterations in original). The Court will consider the details of the interrogation and the defendant's characteristics, such as lack of any advice to the accused of her constitutional rights, length of detention, the nature of the questioning, and the use of physical punishment. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010).

Here, there is no evidence of overreach by the officers involved in the traffic stop and subsequent interrogation. During their testimony at the evidentiary hearing, the officers stated that they never engaged in any type of threatening behavior, such as raising their voices or brandishing their weapons. Tr. (Doc. 39) pp. 16-17, 38, 48. There is no evidence that Guardado was intimidated, coerced, or deceived during her interview. If anything, the fact that GS De Stephano took the time to slowly read Guardado her *Miranda* rights shows an effort to avoid confusion. *Id.* at 50. Moreover, the evidence shows that GS De Stephano read Guardado her rights—in Spanish—and that the interview only lasted approximately

five minutes. *Id.* at 49-51. Altogether, it appears the entire traffic stop along the interstate only lasted thirty minutes to an hour. *Id.* at 31-32, 51. Additionally, although there is no written waiver or recording of a verbal waiver, this is not per se evidence that Guardado's waiver was not voluntary. *See Hart v. Att'y Gen. of State of Fla.*, 323 F.3d 884, 893 (11th Cir. 2003) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)) ("Although a signed *Miranda* waiver form is 'usually strong proof' that a suspect voluntarily waived [her] rights, it is not conclusive on the issue."). Therefore, based on the circumstances surrounding Guardado and the interrogation, her waiver was voluntary and not coerced.

Second, there is sufficient evidence to establish that Guardado's waiver was knowing and intelligent. As soon as the drugs were discovered in the car, arrangements were made to have Guardado interviewed in Spanish. Tr. (Doc. 39) p. 35. GS De Stephano testified that he gave the *Miranda* warning to Guardado exclusively in Spanish, and slowly read the warning directly from a *Miranda* card written in Spanish. *Id.* at 48-50. GS De Stephano then asked Guardado, again, in Spanish, if she understood her rights, to which she answered that she did and agreed to talk. *Id.* at 50. Moreover, GS De Stephano testified that Guardado's answers were appropriate and responsive to his questions, *id.* at 51, indicating that Guardado understood GS De Stephano. Under these circumstances, Guardado's waiver was knowing and intelligent. *See United States v. Espinoza*, 635 F. App'x 739, 747-48 (11th Cir. 2015) (holding a waiver of rights is knowing where the defendant appeared to understand the *Miranda* warnings and provided appropriate responses to all questions); *see also United States v. Boon San Chong*, 829 F.2d 1572, 1574-75 (11th Cir. 1987) (holding that, although language barriers can sometimes impair

a person's ability to knowingly waive his rights, a person who is advised of his rights in his native language, claims to understand those rights, and then elects to answer questions shortly thereafter indicates a knowing and intelligent waiver); *see also United States v. Corrales*, 184 F. App'x 843, 845 (11th Cir. 2006) (upholding a district court's denial of a motion to suppress because the detectives provided *Miranda* warnings in English and Spanish and the defendant expressed that he understood the warnings and wanted to make a statement).

Based on the testimony and other evidence presented at the evidentiary hearing, the undersigned finds that the Government has shown, by a preponderance of the evidence, that GS De Stephano read Guardado her *Miranda* rights—in Spanish—and that she made a voluntary, knowing, and intelligent wavier of her *Miranda* rights. Moreover, Guardado has failed to present any evidence rebutting the testimony provided at the evidentiary hearing. As such, the undersigned recommends that Guardado's Motion to Suppress be denied.

## IV. CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned that Guardado's Motion to Suppress (Doc. 28) be DENIED. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before September 30, 2022. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections

to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 16th day of September, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE